SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

MAY -6 2026

ARTHUR JOHNSTON
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| **v.** | § | **Criminal No. 1:19-cr-106-HSO-JCG-1** |
| **RONALD CHRISTOPHER DRESSNER** | § § § | |

**DEFENDANT RONALD CHRISTOPHER DRESSNER'S MOTION FOR
RECONSIDERATION OF MEMORANDUM OPINION AND ORDER DENYING
MOTION FOR COMPASSIONATE RELEASE (18 U.S.C. § 3582(c)(1)(A))**

COMES NOW Defendant, **Ronald Christopher Dressner** ("Dressner"), appearing *pro se*, and respectfully moves this Honorable Court to reconsider its Memorandum Opinion and Order dated November 14, 2025 [ECF No. 47], denying his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [ECF No. 44.

Because Dressner appears *pro se*, this Court must liberally construe his filings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The Fifth Circuit likewise holds that pro se filings are to be "liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (quotation omitted); see also, *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *Collins v. Dall. Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).

Guided by those principles and the Court's inherent authority to reconsider its own orders in criminal cases, Dressner submits that reconsideration is necessary to correct material misunderstandings of fact and law and to prevent manifest injustice.

## I. GROUNDS FOR RECONSIDERATION

Dressner relies on the following grounds:

### A.       Non-receipt of Government's Response and Court's Order.

The government filed a 20-page Response in Opposition [ECF No. 46], which, according to the docket, was mailed to Dressner at USP/FCI Pollock. Dressner **never received** that Response at his institution. Likewise, he **has not received** a copy of the Court's November 14, 2025 Memorandum Opinion and Order [ECF No. 47] through institutional mail. He learned of the denial only through an outside source. As a result, he was deprived of a meaningful opportunity to rebut the government's factual assertions or to seek timely reconsideration or appeal.

### B.       Misapplication of U.S.S.G. § 1B1.13(b)(3) and BOP Program Statement 5050.50.

The Court misapprehended or clearly erred in applying U.S.S.G. § 1B1.13(b)(3) and BOP Program Statement 5050.50 when it concluded that his parents are not "incapacitated" and that he is not the "only available caregiver," despite unrebutted medical records documenting their serious health conditions and his longstanding caregiver role.

### C.       Incomplete and Imbalanced § 3553(a) Analysis.

In denying relief, the Court's § 3553(a) analysis undervalued Dressner's rehabilitation, age, reduced risk of recidivism, and the severe impact of his continued incarceration on his medically fragile parents and minor relatives, resulting in an unduly harsh outcome inconsistent with Congress's intent in the First Step Act and the Sentencing Commission's 2023 amendments.

## II. RELEVANT BACKGROUND

On February 27, 2020, pursuant to a plea agreement, Dressner pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The

2

Presentence Investigation Report ("PSR") determined that he qualified as an Armed Career Criminal under 18 U.S.C. § 924(e), yielding a guideline range of 180–188 months. The Court sentenced him to **184 months' imprisonment** and five years of supervised release, with a $7,500 fine and $100 special assessment. See Judgment, ECF No. 34.

In March 2024, the Court denied his § 2255 motion as time-barred. Order (ECF No. 40). In 2025, he filed his **Motion for Compassionate Release** [ECF No. 44] under 18 U.S.C. § 3582(c)(1)(A), supported by medical records for his parents and evidence of rehabilitation.

The government then filed a **20-page Response in Opposition** [ECF No. 46]. On November 14, 2025, the Court issued its **Memorandum Opinion and Order** denying compassionate release [ECF No. 47].

Dressner is **47 years old**, currently incarcerated at USP/FCI Pollock in Pollock, Louisiana, with a projected release date of **August 20, 2033**, having served approximately **38%** of his sentence.

## III. <u>COURT'S AUTHORITY TO RECONSIDER ITS ORDER IN A CRIMINAL CASE</u>

The Federal Rules of Criminal Procedure do not expressly provide for "motions for reconsideration." Nevertheless, the Fifth Circuit has long recognized that such motions are a **legitimate procedural device in criminal cases**, even though they are "nowhere explicitly authorized in the Federal Rules of Criminal Procedure." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (citing *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982)).

District courts routinely entertain motions to reconsider in criminal matters, including § 3582 proceedings, to correct **manifest errors of law or fact** or to consider **new evidence** that could not previously have been presented with reasonable diligence. The Supreme Court likewise recognizes that a timely motion for reconsideration is part of the "ordinary incidents of federal litigation," even

3

in criminal cases. See *United States v. Healy*, 376 U.S. 75, 77–79 (1964) (a timely motion for reconsideration renders a criminal judgment non-final for purposes of appeal until resolved).

Thus, although this is not a civil action and the instant motion is not brought under any civil rule, this Court retains **inherent authority** to reconsider its prior order on a criminal motion where necessary to: (1) Correct a clear misapprehension of fact or law; (2) account for information that was not previously available through no fault of the movant; or (3) prevent manifest injustice.

All three are present here.

## IV. <u>ARGUMENT</u>

### A.    <u>Non-Receipt of the Government's Response and the Court's Order Deprived Dressner of a Meaningful Opportunity to Be Heard.</u>

The Court's Memorandum Opinion relies heavily on the Government's Response [ECF No. 46]. The docket reflects that the Response and the Order were mailed, but **in reality** Dressner did not receive the government's filing and has **not** received the Court's Order through the institutional mail system at Pollock. He only learned of the denial from an outside source, and is filing this motion promptly upon learning of the decision.

Because he never saw the government's arguments or factual narrative, he had no opportunity to:

    1.    Contest the government's characterizations of his parents' medical conditions and functional limitations;

    2.    Explain the practical caregiving situation for his parents and minor relatives;

    3.    Address the government's reading of U.S.S.G. § 1B1.13, BOP Program Statement 5050.50, and Fifth Circuit cases such as *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), and *United States v. Jean*, 108 F.4th 275 (5th Cir. 2024); or

    4.    Argue why, on a full record, the § 3553(a) factors favor a reduction.

4

The absence of a reply therefore does not reflect acquiescence or a tactical choice; it reflects a mail and notice failure that Dressner could not control.

Basic fairness—especially for a *pro se* prisoner—requires that a litigant be given notice and a meaningful chance to respond before a court renders a decision that affects his liberty and his family's welfare. The Supreme Court's *pro se* jurisprudence underscores that courts must take seriously the obstacles prisoners face in litigating their own cases and should not penalize them for technical deficiencies or circumstances beyond their control. See *Haines*, 404 U.S. at 520–21; *Erickson*, 551 U.S. at 94. The Fifth Circuit has echoed this, holding that *pro se* filings must be liberally construed and that courts should look past technical defects to reach the substance of the claims. See *Coleman*, 912 F.3d at 828.

This is exactly the sort of situation in which a motion for reconsideration serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Lewis*, 921 F.2d at 564 (quotation omitted). Because the Court's prior ruling effectively rested on a one-sided record, reconsideration is warranted at least to permit:

1. **Service** of the Government's Response [ECF No. 46] and the Court's Order [ECF No. 47] upon Dressner at his current BOP facility; and

2. A reasonable period for him to file a reply and/or supplemental evidence.

**B.    The Court Misapplied § 1B1.13(b)(3) and BOP Program Statement 5050.50 When It Found No Qualifying Family Circumstances.**

In denying compassionate release, the Court acknowledged that:

1. Dressner's father, Ronald Karl Dressner, suffers from Type 2 diabetes mellitus, hyperlipidemia, hypertension, and bilateral hearing loss;

2. His mother, Margo Purvis, suffers from asthma–COPD overlap, chronic obstructive pulmonary disease, acute-on-chronic respiratory failure with hypoxia, and chronic hypoxemic respiratory failure requiring continuous oxygen; and

5

3. Both parents have difficulty performing certain activities of daily living and require assistance with transportation, shopping, and household tasks.

Yet the Court concluded they were not "incapacitated" because they are not "completely disabled" or totally confined to a bed or chair, and further concluded that Dressner is not the "only available caregiver" because two half-brothers exist in theory.

Respectfully, that analysis **sets the bar too high** and misreads both the guideline and BOP policy. "Incapacitated" under § 1B1.13(b)(3) does not require total immobility.

Under the Sentencing Commission's November 1, 2023 amendments, U.S.S.G. § 1B1.13(b)(3) expressly recognizes family-circumstance reasons for compassionate release when the defendant is **the only available caregiver** for an incapacitated parent, and when the incapacitated family member cannot carry out self-care or manage their own affairs without substantial assistance. The text focuses on **functional limitations and the need for significant care**, not on extreme, bed-bound conditions.

Similarly, BOP Program Statement 5050.50 examines whether the family member is unable to care for themself and whether the defendant is needed as a caregiver; it does not require that the person be completely immobile or institutionalized.

The record here shows:

1. Serious, chronic, and progressive illnesses for both parents;

2. Dependence on continuous oxygen for his mother; and

3. Documented need for assistance with daily tasks, transportation, and day-to-day functioning.

These facts strongly support a finding of **functional incapacitation**, even if his parents can still attend medical appointments or perform limited tasks with assistance. District courts applying

6

the same framework have treated similar circumstances as "extraordinary and compelling" when the defendant was the only realistic caregiver for a medically fragile parent. See, *e.g.*, *United States v. Bucci*, 409 F. Supp. 3d 1, 2–3 (D. Mass. 2019).

By effectively equating "incapacitated" with total physical immobility, the Court imposed a standard more restrictive than either § 1B1.13 or Program Statement 5050.50 requires. The existence of relatives on paper is not the same as an "available caregiver."

The Court also relied on the fact that Dressner has two half-brothers and therefore concluded he is not the "only available caregiver." But the mere existence of biological relatives does not establish that they are able, willing, and practically available to assume full-time caregiving responsibilities for two severely ill parents and minor children. Courts look to **actual availability**, not just family tree entries.

If allowed, Dressner can submit declarations and other documentation explaining:

1.  Why his half-brothers cannot realistically provide day-to-day care;

2.  The extent to which his parents already struggle even with current support; and

3.  The impact of his brother's potential incarceration on the minor children in the home.

On a fuller record, this case fits squarely within the family-circumstance and "other reasons" categories the Commission intended to cover through § 1B1.13(b)(3) and (b)(5). Combined, these family circumstances contribute to "extraordinary and compelling reasons."

The Fifth Circuit recognizes that district courts retain broad discretion to determine what constitutes an "extraordinary and compelling" reason under § 3582(c)(1)(A), bounded by the statute and the Commission's policy statement. See *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir.

2021). Courts routinely look to the **combined impact** of family hardship, health issues, rehabilitation, and sentence length, rather than demanding that each factor independently clear the bar.

When properly understood, the combined facts here—a pair of elderly, medically fragile parents who depend on assistance, minor relatives in the home, the real lack of alternative caregivers, and Dressner's post-sentencing rehabilitation—rise to the level of "extraordinary and compelling reasons" for a sentence reduction.

### C.      The § 3553(a) Factors Should Be Re-Weighed on a Complete Record.

Even when extraordinary and compelling reasons exist, relief under § 3582(c)(1)(A) remains discretionary and must be consistent with the § 3553(a) factors. See *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). In denying relief, the Court emphasized:

1.      The seriousness of the underlying offense and criminal history;

2.      The description of prior gang involvement in the PSR;

3.      His disciplinary record in prison; and

4.      The fact that he has served about 38% of his sentence.

Those are legitimate concerns. But on reconsideration, the § 3553(a) analysis should also account for:

1.      **Rehabilitation.**

The Supreme Court has recognized that post-sentencing rehabilitation is highly relevant to determining an appropriate sentence. See *Pepper v. United States*, 562 U.S. 476, 490–93 (2011). Dressner's institutional record reflects sustained efforts at self-improvement, programming, and preparation for a law-abiding life—factors that bear directly on deterrence, respect for the law, and protection of the public.

8

### 2. Age and reduced risk of recidivism.

At 47, and with more than a decade behind him in federal custody, his risk of future dangerousness is significantly lower than at the time of sentencing, especially given his rehabilitation. The marginal deterrent and incapacitative value of requiring him to serve every remaining month up to 2033 is far lower than it once was.

### 3. Severe collateral impact on innocent family members.

The § 3553(a) factors include the "history and characteristics of the defendant" and the need for a sentence to reflect "just punishment." They do not demand that punishment fall disproportionately on innocent, medically fragile parents and minor children who depend on him for care and stability. The Court should consider the humanitarian impact of continued incarceration, especially now that compassionate release is meant to be a **real, not theoretical, safety valve** under the First Step Act.

### 4. Flexible tools: supervised release and conditions.

If the Court remains concerned about public safety, it can mitigate risk through a reduced term of imprisonment coupled with a lengthy term of supervised release and stringent conditions (home confinement, location monitoring, no-contact or association restrictions, mental health treatment, etc.). Congress and the Supreme Court have emphasized that in sentence-modification proceedings courts may consider a "full slate" of information and options. *Concepcion v. United States*, 597 U.S. 481, 493–95 (2022).

On a complete and adversarial record—including a reply from Dressner and any supplemental evidence the Court may permit—the § 3553(a) factors support at least a partial reduction in his sentence under § 3582(c)(1)(A).

9

## V. <u>REQUESTED RELIEF</u>

For all the foregoing reasons, Dressner respectfully requests that the Court:

1. **Grant this Motion for Reconsideration;**

2. **Vacate** its November 14, 2025 Memorandum Opinion and Order [ECF No. 47];

3. Find that, on a complete record, **extraordinary and compelling reasons exist** under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13;

4. Re-weigh the **§ 3553(a)** factors in light of his family circumstances, rehabilitation, age, and reduced risk of recidivism; and

5. **Reduce his 184-month term of imprisonment** to a lesser term the Court deems sufficient but not greater than necessary (including, if appropriate, time served followed by a substantial term of supervised release with strict conditions).

In the alternative, if the Court is not prepared to grant immediate relief, Dressner respectfully requests that the Court:

1. Direct that the Government's Response [ECF No. 46] and the Court's Order [ECF No. 47] be **served on him at his current BOP facility;**

2. Allow him at least 30 days from receipt to file a **reply** and any **supplemental evidentiary submissions;** and

3. Then reconsider the motion on a fully developed record, construing his pro se submissions liberally consistent with *Haines*, *Erickson*, and *Coleman*.

Respectfully submitted,

Dated: November 21, 2025

RONALD CHRISTOPHER DRESSNER
REG. NO. 21530-043
FEDERAL CORR. INSTITUTION
FCI POLLOCK
P.O. BOX 4050
POLLOCK, LA 71467

10

## V. <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November ____, 2025, a true and correct copy of the above and foregoing Defendant Ronald Christopher Dressner's Motion for Reconsideration of Memorandum Opinion and Order Denying Motion for Compassionate Release (18 U.S.C. § 3582(c)(1)(A)) was sent via First Class U. S. Mail, postage prepaid, to Amber S. Jones, Assistant U. S. Attorney, at U.S. Attorney's Office, E. Court Street, Ste. 4,430, Jackson, MS 39201.

RONALD    CHRISTOPHER    DRESSNER

11